# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANAID EL, Ex-Relatione DIANA DAWES/DAWES, DIANA,<br><br>        Plaintiff,<br>v.<br><br>WILLIAM WHITEHEAD, in his individual and official capacity, JAY MORAN, in his individual and official capacity, SARA GREENE, in her individual and official capacity, STUART ROSEN, in his individual and official capacity, MICHAEL BZDYRA, in his individual and official capacity, JOHN DOE, in his individual and official capacity, and JANE DOE, in her individual and official capacity,<br><br>        Defendants. | Civil Action No.<br>3:18-cv-02033 (CSH)<br><br>October 22, 2019 |

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

**Haight, Senior District Judge:**

Plaintiff Anaid El brings this action against Judge Stuart Rosen, Connecticut Department of Motor Vehicles Commissioner Michael Byzdyra, Assistant State Attorney Sara Greene, Officer William Whitehead, and Mayor Jay Moran (collectively, the "Defendants") to challenge a judgment of conviction for operating an unregistered and uninsured motor vehicle, as well as the subsequent administrative suspension of Plaintiff's driver's license for failure to pay fines associated with her conviction. Plaintiff requests that this Court intervene in the state action to reinstate her driver's license and vacate the fines levied against her. Plaintiff also demands money damages and costs. Finally, she seeks injunctive and declaratory relief finding that Connecticut's statutes mandating the registration and insurance of motor vehicles is unconstitutional, and

1

prohibiting the imposition of penalties for failure to register or insure vehicles by individuals not engaged in commercial activities.

On January 29, 2019, Defendants Judge Stuart Rosen, Connecticut Department of Motor Vehicles Commissioner Michael Byzdyra, and Assistant State Attorney Sara Greene (collectively, the "State Defendants"[1]) filed a motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (5), and (6). They argue that: (1) Plaintiff's claims against Judge Rosen and Attorney Greene are barred by absolute immunity; (2) Plaintiff's claims against all State Defendants in their individual capacities are barred by qualified immunity; (3) all of Plaintiff's claims against the State Defendants in their official capacities are barred by the Eleventh Amendment; (4) Plaintiff's claims challenging her conviction for failure to register or insure her vehicle are foreclosed under the *Rooker-Feldman* doctrine; (5) Plaintiff has failed to state any claim against the State Defendants for which relief may be granted; and (6) the court lacks personal jurisdiction over any State Defendant because Plaintiff has not properly served them.

On February 4, 2019, Defendants Officer Whitehead and Mayor Moran (collectively, the "Municipal Defendants") filed their own motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (5), and (6). Their arguments largely mirror those made by the State Defendants. Specifically, they contend that: (1) Plaintiff's claims are barred by *Heck v. Humphrey* and the *Rooker-Feldman* doctrine; (2) the court lacks personal jurisdiction over any City Defendant because Plaintiff has not properly served them; (3) Plaintiff has failed to state any claim against

---

[1] Plaintiff asserts that Judge Rosen and Attorney Greene are "Manchester company employees," which the Court and Defendants interpret as a contention that Judge Rosen and Attorney Greene were employed by the city of Manchester. This is incorrect. Judge Rosen is a Connecticut Superior Court judge employed by the State of Connecticut. Similarly, as a Connecticut Assistant State's Attorney, Attorney Green is also an employee of the State of Connecticut.

2

the State Defendants for which relief may be granted; and (4) Plaintiff's claims against all City Defendants in their individual capacities are barred by qualified immunity.[2]

Because this Court does not have jurisdiction over Plaintiff's claims, the Defendants' motions to dismiss are GRANTED and the case is DISMISSED.

I.  **Background**

The allegations set forth in the Complaint, taken as true for purposes of this ruling, are summarized as follows.

On April 7, 2016, Officer Whitehead, an East Hartford police officer, observed Plaintiff pulling a motor vehicle into a private driveway. Doc. 1 ("Compl.") at 2. Officer Whitehead spoke with the Plaintiff, who admitted that she did not have automobile insurance. *Id.* Consequently, Officer Whitehead issued Plaintiff a citation for operation of a motor vehicle without registration or insurance in violation of Connecticut General Statutes §§ 14-12c, 14-213b, and 38a-371. The citation informed Plaintiff that she was required to "attend a meeting on the 25th of April at Manchester company building or a 'warrant' would be issued for [her] arrest." *Id.* Plaintiff did not attend the "meeting"[3] at the specified location, and instead mailed a "rebuttal" to her citation. *Id.* She also filed a civil action in state court challenging her citation, which was dismissed for

---

[2] Plaintiff filed a surreply in response to the State Defendants' Reply Brief, styled as an "objection" to the State Defendants' Reply, without leave of court to do so. *See* Doc. 33 ("Surreply"). The Court has exercised its discretion to consider Plaintiff's Surreply in developing this Ruling. Plaintiff also did not file an opposition to the Motion to Dismiss by Defendants Whitehead and Moran. She erroneously wrote in her Surreply that "there has been no response to date from Jay Moran and William Whitehead." Surreply at 1. Although district courts have the discretion to "deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed," the court declines to do so here in light of the Plaintiff's *pro se* status and the overlapping arguments made by the State Defendants and Municipal Defendants. *See Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004).

[3] Throughout her pleadings, Plaintiff appears to refer to Court appearances as "meetings."

insufficient service of process. *Id.* Plaintiff subsequently brought a federal habeas corpus action in this Court challenging the citation, which was dismissed.[4] *Id.*

In May 2018, a notice to appear in state court was mailed to Plaintiff at an "outdated mailing location." *Id.* at 3. After Plaintiff failed to appear, the court issued Plaintiff a bail commissioner's letter. *Id.* Plaintiff then appeared at court on June 4, 2018, and a trial was held on November 16, 2018. *Id.* Judge Rosen presided over the trial, and Attorney Greene presented the state's case against Plaintiff. *Id.* Officer Whitehead appeared as a witness against Plaintiff. *Id.*

At trial, Plaintiff questioned Officer Whitehead, but declined to present a defense or agree to be questioned because she believed that it was "not a fair and impartial hearing." *Id.* Judge Rosen found Plaintiff guilty of operating a motor vehicle without registration or insurance, and imposed a fine of $290. *Id.* Plaintiff was provided notice of her right to appeal the judgment within 20 days, but did not do so. *Id.* at 3-4.

On November 17, 2018, the DMV sent a notice to Plaintiff informing her that her driver's license would be suspended effective December 17, 2018, "as a result of a 'conviction of operating without required insurance,'" and that restoration of her license would require payment of a $175 restoration fee. *Id.* at 4. The notice also advised Plaintiff that she could request an administrative hearing to contest the suspension. *Id.* Plaintiff sent a request directly to Commissioner Byzdyra seeking to contest the suspension. *Id.* Commissioner Byzdyra did not respond. *Id.*

On December 12, 2018, Plaintiff filed the present Complaint. *See* Doc. 1. The next day,

---

[4] Plaintiff alleges that her federal case was dismissed for failure to timely respond to a reply brief. Compl. at 2. However, the Court takes judicial notice of this Court's prior order dismissing the case for lack of subject matter jurisdiction because Plaintiff was not in state custody at the time she filed the petition for writ of habeas corpus. *Sewad El v. Manchester Corp.*, 3-16-cv-01437 (CSH), Order Granting Respondents' Unopposed Motion to Dismiss (Doc. 5) (D. Conn. Feb. 15, 2017).

Plaintiff filed a motion for an "Emergency Stay/Protective Order," in which she requested "a stay" against the "proposed suspension" of her driver's license (the "TRO Motion"). Doc. 5 at 1. The Court denied that motion, finding that Plaintiff had failed to allege facts sufficient to demonstrate a likelihood of irreparable harm. Doc. 8. On December 17, 2018, Plaintiff filed a motion seeking reconsideration of the Court's denial of her TRO Motion. Doc. 13. The Court denied that motion as well. Doc. 20.

## II.     Discussion

Plaintiff principally alleges that the state cannot require her to register or insure her vehicle because the is not using the vehicle in a "commercial capacity." Compl. at 6. Specifically, Plaintiff contends that the government cannot require private citizens not engaged in commercial activity to register or insure their vehicles because to do so would infringe on those individual's constitutional right to travel and the United States Motor Vehicle Safety Program. She further alleges that the state court proceedings before Judge Rosen and subsequent revocation of her driver's license violated her due process rights and her constitutional right.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430-31, 127 S. Ct. 1184, 167 L. Ed.2d 15 (2007) (citing *Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 93-102, 118 S. Ct. 1003, 140 L. Ed.2d 210 (1998)). Although a court is free to "choose among threshold grounds" for dismissing an action provided that none involve "a judgment on the merits," *id.* at 431 (internal quotation marks omitted), "the proper course" is to dismiss an action for lack of jurisdiction if the "court can readily determine that it lacks jurisdiction over the cause or the defendant," *id.* at 436.

Under the circumstances of this case, the Court will first address the Defendants' objections to personal jurisdiction, then turn to subject matter jurisdiction and absolute immunity. Consideration of these threshold jurisdictional issues alone is sufficient to decide Defendants' motions.

**A. Insufficient Service**

The Defendants have moved to dismiss this action for improper service under Fed. R. Civ. P. 12(b)(5). Specifically, they claim that Plaintiff failed to comply with the Federal Rules of Civil Procedure and Connecticut state law by effectuating service on each Defendant at his or her workplace.

In the absence of proper service, a district court lacks personal jurisdiction over those defendants not properly served. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Once validity of service has been challenged, plaintiff bears the burden of proving service of process was adequate, *Khan v. Khan*, 360 Fed. App'x 202, 203 (2d Cir. 2010), "through specific factual allegations and any supporting materials," *Kwon v. Yun*, No. 05–CV–1142, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006). Furthermore, a defendant's "actual notice" of a complaint does not cure otherwise defective service: the Complaint must have been *properly* served in accordance with state and federal law. *See, e.g.*, *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C. V.*, 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006).

In analyzing a motion under Rule 12(b)(5), the Court must look to the service requirements set forth in Federal Rule of Civil Procedure 4. Rule 4(e)(2) sets forth three specific ways in which service may be properly effectuated on an individual:

> (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode ...; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2) (paragraph breaks omitted).

Alternatively, Rule 4(e)(1) and 4(j)(2) of the Federal Rules of Civil Procedure permits service in accordance with the law of the state in which the district court is located or in which service is made. Fed. R. Civ. P. 4(e)(1). Under Connecticut law,[5] service of process on an individual may be accomplished by "leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52-57(a). Connecticut law also sets forth separate requirements for service on municipal and state actors sued in their official capacities. For municipal employees sued in their official capacities, process must be served upon the clerk of the town, city, or borough. Conn. Gen. Stat. § 52-57(b). For state employees sued in their official capacities, process must be served upon the Attorney General in Hartford, Connecticut. Conn. Gen. Stat. § 52-64(a).[6]

---

[5] Pursuant to Fed. R. Civ. P. 4(e)(1), Connecticut law governs because it is both the location of the district court and where service was made.

[6] Where, as here, the Defendants have been sued in their individual and official capacities, the law is unsettled as to whether the Defendants must be served at *both* the location required for an official capacity suit and an individual capacity suit, or just one location. *Compare Field v. City of Hartford*, No. 3:18-CV-01803 (JAM), 2019 WL 4279011, at *3-6 (D. Conn. Sept. 9, 2019) (holding that service on the town clerk was sufficient to sustain suit against municipal employee in his individual and official capacities; service at the municipal employee's home was not required) *with Eiden v. McCarthy*, 531 F. Supp. 2d 333, 344 (D. Conn. 2008) ( concluding that "[s]ervice on [a] defendant . . . through the Attorney General . . . is insufficient to subject her to suit in her individual capacity") *and Davis v. Mara*, 587 F. Supp. 2d 422, 425-26 (D. Conn. 2008) ("[T]he Court concludes that when a plaintiff sues a state employee in her individual capacity, the plaintiff must serve process on the defendant [at the defendant's home] pursuant to § 52–57(a) and not § 52–64."). The Court need not decide the issue here, as Plaintiff's service was deficient under either reading of the law.

In the case at bar, Plaintiff could have properly served the Defendants in a number of ways: by personally delivering service, by leaving a copy of service at the Defendants' "usual place of abode," or by serving "an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Alternatively, the State Defendants could have been served via the Attorney General, and the Municipal Defendants could have been served through the clerk of the town, city, or borough. Here, instead, the record indicates that Plaintiff mailed copies of the Complaint, addressed to each Defendant, at his or her place of work: Judge Rosen and Attorney Greene at the Connecticut Superior Court Geographical Area 12 courthouse in Manchester; Commissioner Byzdyra at a DMV office in Hartford; Mayor Moran at Manchester Town Hall; and Officer Whitehead at the East Hartford Police Department. *See* Docs. 6, 7, 9, 10, 11. Such service does not comport with state or federal law.[7]

Plaintiff's contention that she was unable to find the Defendants' home addresses does not alter this conclusion. Service at home is not the only method provided by Rule 4(e) or Connecticut law. *See* Fed R. Civ. P. 4(e)(2) (also providing for service by delivery of summons personally to the individual or to agent authorized by appointment or by law to accept service); Conn. Gen. Stat. 52-57(a) (providing that municipal employees sued in their official capacities be served through the municipality clerk); Conn. Gen. Stat. § 52-64(a) (providing that state employees sued in their official capacities be served through the Attorney General); *see also Rzayeva v. United States*, 492 F. Supp. 2d 60, 76 (D. Conn. 2007) (plaintiffs' contention that they served defendant at the U.S. Attorney's office because they could not find his home address was "not a valid reason for departing from their procedural obligations under the federal rules"). Plaintiff's argument that "the rules of which [State Defendants' counsel] speaks are specifically reserved for 'Attorneys'

---

[7] Plaintiff does not allege that the individuals who received the Complaint were authorized agents for service upon any Defendant.

and not free human beings" is equally unavailing. "[T]he latitude afforded pro se litigants does not extend to dispensing with service requirements." *Stoianoff v. Comm'r Of Motor Vehicles*, 208 F.3d 204 (2d Cir. 2000). The Federal Rules of Civil Procedure apply equally to all litigants – including *pro se* litigants – who seek to avail themselves of the federal court system.

Finally, while the Court is empowered under Rule 4(m) to extend the deadline for service rather than dismiss the Complaint "if the plaintiff shows good cause for the failure" to properly serve process on the defendant, Fed. R. Civ. P. 4(m), Plaintiff here has neither sought an extension of time nor demonstrated good cause for such an extension. "[A] mistaken belief that service was proper does not constitute good cause." *Jonas v. Citibank*, N.A., 414 F.Supp.2d 411, 416 (S.D.N.Y. 2006).

Nor is extension warranted on a discretionary basis. In *Zankel v. United States*, 921 F.2d 432 (2d Cir. 1990), the Second Circuit set forth a four-part test for a district court to grant a discretionary extension:

> (1) necessary parties in the government have actual notice of a suit; (2) the government suffers no prejudice from a technical defect in service; (3) there is a justifiable excuse for the failure to serve properly; and (4) the plaintiff would be severely prejudiced if the complaint were dismissed.

*Id.* at 435.

In weighing the *Zankel* factors, the Second Circuit has repeatedly held that "before we will even consider vacating a Rule 4(m) dismissal for abuse of discretion, the plaintiff must ordinarily advance some colorable excuse for neglect." *Zapata v. City of New York*, 502 F.3d 192 (2d Cir. 2007). In *Zapata*, the Second Circuit affirmed the district court's dismissal of a complaint for insufficient service of process where the plaintiff "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time," and only

attempted to excuse his delay in service by asserting that he was unaware of the location where the defendant officer could be served. *Id.* at 199. The court concluded that the plaintiff had failed to put forth "any colorable excuse for" his neglect, and thus, "[e]ven assuming the prejudice to [the defendant] was slight," and the defendants had notice of the suit, the district court did not abuse its discretion. *Id.*

To similar effect, in *Volat v. Runyon*, 125 F.3d 846 (2d Cir. 1997), the Second Circuit affirmed the district court's dismissal of the plaintiff's complaint for improper service. The court emphasized that "plaintiff's counsel offered no excuse for failure to serve properly other than lack of familiarity with the service rules, which does not constitute 'justifiable excuse' under *Zankel*." *Id.* at 846 (citation omitted). The Court also rejected plaintiff's argument that he would be severely prejudiced by dismissal because the statute of limitations period on his claim had expired: "there was no evidence of misleading conduct [by the defendant]" and "there is no legal obligation [on the defendant] to move to dismiss within the limitations period." *Id.*

Not only has Plaintiff provided no justifiable excuse for failure to serve the Defendants properly – Plaintiff's prior complaint in state court arising from the same incident was dismissed for improper service. In that case, the state court's Memorandum of Decision described with specificity the service requirements for individual and municipal and state defendants under Connecticut state law. Plaintiff again failed to comply with those requirements in the present case. Under such circumstances, the Court cannot "ignore that the situation is the result of the plaintiff's neglect." *Zapata*, 502 F.3d at 198.[8] Accordingly, the Court lacks personal jurisdiction over the Defendants and dismissal of the Complaint is warranted. *See Husner v. City of Buffalo*, 172 F.3d 37 (2d Cir. 1999) (affirming district court's dismissal of complaint where plaintiff failed to include

---

[8] Additionally, as in *Volat*, there are no allegations that the Defendants engaged in misleading conduct – the Plaintiff simply neglected to follow the service requirements.

two copies of his "proof of service – acknowledgement of service" form or a return envelope with the summons and complaint, as required by New York law); *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 507-09 (2d Cir. 2006) (affirming district court's dismissal of plaintiff's complaint for improper service of process where defendants had actual notice of plaintiff's claims and plaintiff argued that defendants had suffered no prejudice from the improper service); *Obot v. Navient Sols., Inc.*, 726 F. App'x 47 (2d Cir. 2018) (affirming district court's dismissal of plaintiff's complaint for improper service of process, notwithstanding defendants' actual notice of plaintiff's claims and plaintiff's *pro se* status).

### B. Lack of Subject Matter Jurisdiction

Even if the Court did have personal jurisdiction, however, almost all of Plaintiff's claims must be dismissed for lack of subject matter jurisdiction.

Pursuant to Rule 12(b)(1), a district court must dismiss an action for lack of subject matter jurisdiction when the court "lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011); *see also Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 250 (2d Cir. 2008) ("If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action."); *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,

752 F.3d 239, 243 (2d Cir. 2014). The plaintiff typically bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists,[9] and the district court may examine evidence outside of the pleadings to make this determination. *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (citations and internal quotation marks omitted).

The Defendants raise two separate challenges to Plaintiff's subject matter jurisdiction. First, they argue that operation of the *Rooker-Feldman* doctrine bars Plaintiff's claims to the extent she seeks to challenge her conviction for failure to register and insure her vehicle. Second, they contend that Plaintiff's claims for monetary relief against the State Defendants in their official capacity are barred by the Eleventh Amendment sovereign immunity. The Court will address each argument in turn.

### 1. *Rooker-Feldman* Doctrine

The Defendants first argue that this Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine. *See generally D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) (dismissing for lack of subject matter jurisdiction a suit brought by plaintiffs in federal district court which sought to have a prior state court judgment, adverse to the plaintiffs, declared "null and void").

The *Rooker-Feldman* doctrine recognizes that "federal district courts lack jurisdiction over

---

[9] However, where a defendant official or governmental entity asserts the Eleventh Amendment as the basis of the 12(b)(1) motion, the burden falls to that entity to prove its entitlement to dismissal on the grounds of immunity from suit. *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 239 (2d Cir. 2006).

suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). The doctrine is grounded in the principle, expressed by Congress in 28 U.S.C. § 1257, that only the Supreme Court has appellate jurisdiction to reverse or modify a state court judgment – even a state court judgment that was wrongly procured. *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) ("[Section] 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court. . . ."). The Second Circuit has articulated four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must ask the district court to review and reject that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). The Second Circuit has classified the first and fourth requirements as "procedural" and the second and third requirements as "substantive." *Id.*

To the extent that Plaintiff seeks to have her driver's license reinstated and collect compensatory and punitive damages from her conviction for failure to insure or register her vehicle, the Court finds that all four factors compelling the application of the *Rooker-Feldman* doctrine are present. Plaintiff freely admits that she "was found guilty" in state court and assessed a fine of $290, Compl. at 3, and the state-court judgment was rendered approximately one month before the present district court proceedings commenced. Thus, both procedural requirements are met.

With respect to the substantive requirements, Plaintiff explicitly asks the Court to vacate her state court conviction and reverse the suspension of her driver's license. Vacating Plaintiff's

state court conviction would, by definition, "result in the reversal or modification of a state court judgment," *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998), and is thus barred by *Rooker-Feldman*. While the state court judgment did not specifically order that Plaintiff's driver's license be suspended, the *Rooker-Feldman* doctrine applies when "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment . . . ." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005); *see also McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) (applicability of the *Rooker-Feldman* doctrine turns on "the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court"). The suspension of Plaintiff's driver's license was "directly produced" by the state court judgment against her: Connecticut law *mandates* that "[t]he Commissioner of Motor Vehicles *shall* suspend the . . . operator's license, if any, of any owner, for a first conviction" of operating an uninsured or underinsured motor vehicle. Conn. Gen. Stat. § 14-213b(c) (emphasis added). The *Rooker-Feldman* doctrine thus applies.

Plaintiff's arguments to the contrary are without merit. First, Plaintiff contends that *Rooker-Feldman* does not apply because she was not convicted of a crime in a criminal proceeding. But the *Rooker-Feldman* doctrine operates to bar review of *all* state court judgments – including those arising from civil proceedings. Plaintiff's further attempt to argue that she was not "convicted" by a state court trial, *see* Objection at 4 ("there was no court, there was no trial, there were no jury members") is belied by her own allegations: she describes the entire trial process at length and acknowledges that she was found guilty by the judge, *see* Compl. at 3.

Second, Plaintiff asserts that the doctrine does not apply because her case involves a different issues than *Rooker* and *Feldman*, which concerned state decisions regarding property in

a trust and bar admission, respectively. But the *Rooker-Feldman* doctrine is not limited to the exact factual situations that arose in those cases. The legal principles on which those decisions rested, applied in the instant case, compel dismissal of Plaintiff's claims seeking reversal of her state court conviction and reinstatement of her driver's license.

### 2. Eleventh Amendment Immunity

The State Defendants further argue that Plaintiff's claims against the State Defendants in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment divests federal courts of subject-matter jurisdiction over any claims for retrospective relief against a state, unless the state has waived this immunity or Congress has enacted a valid override. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). This sovereign immunity extends both to state administrative agencies, *Alabama v. Pugh*, 438 U.S. 781, 781–782 (1978), and state officials acting in their official capacities, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).[10]

In general, "a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-102 (1984). The Supreme Court has, however, recognized a limited exception to Eleventh Amendment immunity for suits against state officials in their official capacities seeking only prospective relief. Under *Ex parte Young*, 209 U.S. 123 (1908) and its progeny, "sovereign immunity [does] not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them 'immunity from responsibility to the supreme authority of the United States.'" *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371

---

[10] The Defendants do not dispute that the Eleventh Amendment does not extend to Plaintiff's claims against the State Defendants in their individual capacities.

(2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. at 160). This exception applies only when the state official against whom suit is brought has "some connection with the enforcement of the act that is in continued violation of federal law." *Id.* at 372–73 (quotation marks omitted).

In the case at bar, to the extent Plaintiff seeks monetary damages from the State Defendants in their official capacities, her claims are unmistakably barred by the Eighth Amendment and must be dismissed. *See Bd. of Educ. v. Schulz*, 290 F.3d 476, 480 (2d Cir. 2002). However, to the extent the Complaint seeks an injunction and declaratory relief on the grounds that Connecticut's mandatory insurance and registration laws are unconstitutional, the doctrine of *Ex Parte Young* is applicable, and the district court has subject matter jurisdiction. *See Stoianoff v. Comm'r Of Motor Vehicles*, 208 F.3d 204 (2d Cir. 2000). This claim, however, must nonetheless be dismissed for lack of personal jurisdiction. *See* Section II (A).

### C. Absolute Judicial and Prosecutorial Immunity

Finally, the Court notes that even if it were not deprived of personal and subject matter jurisdiction over this litigation for the reasons previously discussed, Plaintiff's claims for monetary damages would still fail against Attorney Greene and Judge Rosen based on absolute immunity. "Government officials who 'perform functions closely associated with the judicial process,'" including state prosecutors and judges, "are entitled to absolute immunity for acts taken pursuant to their office." *Finn v. Anderson*, 592 F. App'x 16, 18-19 (2d Cir. 2014) (quoting *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988)). "The law affords judges absolute immunity from personal liability for acts 'committed within their judicial jurisdiction,' however erroneous the act and regardless of motivation." *Tapp v. Champagne*, 164 F. App'x 106, 107-08 (2d Cir. 2006) (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967)). The same absolute immunity protects prosecutors from suit "for their conduct in initiating a prosecution and in presenting the

State's case . . . insofar as that conduct is intimately associated with the judicial phase of the process." *Burns v. Reed*, 500 U.S. 478, 485 (1991) (internal quotation marks and citation omitted). Both judicial and prosecutorial immunity "act as a complete shield to claims for money damages," *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (citations omitted), and provide robust protection against even allegations of bad faith or malice, *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).

Plaintiff alleges that Judge Rosen presided over her trial, found her guilty of failure to register or insure her vehicle, and imposed a fine against her as a result of her conviction. Presiding over a trial, rendering a verdict, and sentencing a defendant fall squarely within a judge's "judicial function within his jurisdiction." *Hili v. Sciarrotta*, 140 F.3d 210, 213 (2d Cir. 1998). Plaintiff's claims for monetary damages against Judge Rosen are therefore barred by absolute judicial immunity.

With respect to Attorney Greene, Plaintiff alleges, at most, that she presented the State's case against Plaintiff.[11] This is the paradigmatic function for which a prosecutor is entitled to absolute immunity. Plaintiff's claims for damages against Attorney Greene are therefore also barred by absolute immunity.

## III. Conclusion

Because the Complaint must be dismissed in its entirety for lack of jurisdiction, the Court does not address the additional points in support of dismissal raised by Defendants and opposed

---

[11] In her Complaint, Plaintiff alleges only that Attorney Greene was "present" at Plaintiff's trial. Compl. at 3. Viewing the Complaint in the light most favorable to the Plaintiff, the Court infers that Attorney Greene is the attorney who prosecuted the case against Plaintiff. This inference is reasonable in light of Plaintiff's allegations that Attorney Greene was one of only three "employees" present at the trial, Compl. at 3, as well as Attorney Greene's employment as a prosecutor at the Connecticut State Attorney's Office.

by Plaintiff.  The State Defendants' Motion to Dismiss [Doc. 25] and the Municipal Defendants' Motion to Dismiss [Doc. 26] are GRANTED.  The Clerk is directed to close this case.

It is **SO ORDERED.**

Dated:  New Haven, Connecticut
　　　　October 22, 2019

　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Charles S. Haight, Jr.*
　　　　　　　　　　　　　　　　　　　　　　　　　　　Charles S. Haight, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　　　　Senior United States District Judge